UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


AQUANETTE HAMPTON,
individually and on behalf of all
others similarly situated,

       Plaintiff,                    CIVIL ACTION NO. 04 CV 70221 DT

       v.                        DISTRICT JUDGE BERNARD A. FRIEDMAN

HENRY FORD HEALTH SYSTEM     MAGISTRATE JUDGE VIRGINIA MORGAN
and HENRY FORD HEALTH SYSTEM
PENSION PLAN,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

     This matter is before the court on cross motions for summary judgment in this civil

action.  Jurisdiction is based on Employee Retirement Income Security Act ("ERISA") §

502(a)(3), 29 U.S.C. § 1132(a)(3) (2000).  Plaintiff (and the purported "class" of participants)

were employees of Detroit Osteopathic Hospital Corporation (DOHC) and participants in the

DOHC/Horizon pension plan.  Then on July 31, 2002 the DOHC/Horizon plan was merged with

the Henry Ford Health System (HFHS) pension plan (the "Plan").  Each participant in the DOHC

plan was credited with an "Opening Account Balance" in the HFHS plan on August 1, 2002.

     Plaintiff contends that the opening account balance was understated because defendant

utilized a lower interest to discount her lump sum accrued benefits to present value than

authorized by the Plan or applicable law.  Plaintiff asserts that rather than the 30-year Treasury

rate from August 2001, the defendant should have used the applicable 30-year Treasury rate from August, 2002, based on I.R.C. § 417(e), further defined in Treasury Regulation ("TR") § 1.417(e)-1(d); 26 C.F.R. § 1.417(e)-1(d) (2002), and ERISA § 205(g)(3). Therefore, plaintiff seeks recalculation of her opening account balance in accordance with the August, 2002 discount interest rate along with the recalculation of her transfer credit and subsequent periodic pension accruals based on the adjusted opening account balance.

Defendant, HFHS, avers that, as Plan Administrator, it lawfully exercised its discretion under the Plan in choosing a reasonable interest rate for the purpose of calculating the present value of plaintiff's accrued pension benefit to determine her appropriate opening account balance as of August 1, 2002. HFHS asserts that the Plan terms outlining the "Opening Account Balance" referred to, not only the applicable IRC and ERISA sections cited by plaintiff, but also to the Plan section which referred to "Actuarial Equivalent" computation for the purpose of calculating distributions under the Plan. Defendant represents that this rate is the normal means of computing lump sum distributions from the plan and is therefore a reasonable interpretation of the Plan's computation of the plaintiff's opening balance.

## I. BACKGROUND

This claim is brought pursuant to ERISA § 502(a)(3). Unlike many ERISA claims which present issues of factual review of an individual's medical condition and benefits, this case involves application of a contractual interest rate determined under a cash benefit pension plan in accordance with applicable IRS and ERISA laws. In addition to the issue of determining the applicable discount interest rate for the purpose of computing the opening account balances, the

claim also involves determination of the point at which such rate is applied in converting from the DOHC plan to HFHS.

The higher an interest rate chosen for the computation of present value, the lower the resulting opening account balance.  Here, defendants chose the August, 2001 30-year Treasury rate of 5.48% to compute the opening account balances as of August 1, 2002.[1]  The plaintiffs urge that the documentation provided to participants led to the reasonable expectation that the 30-year Treasury rate at the time of the conversion would be utilized.  Therefore, plaintiff asserts that the August, 2002 rate of 5.08% should have been applied to calculate the participants' opening account balances.[2]  The approximate difference in plaintiff's opening account balance would be nearly $9,000.

Plaintiff sent a letter requesting the re-calculation of her opening account balance and explaining her claim to the Plan Administrator on March 13, 2003.  (Joint Exhibit ("Ex.") 1, Bates # 1001)  She received an initial denial letter from James Francis, Henry Ford's Corporate Retirement Manager, on April 4, 2003, explaining the denial via attached Plan excerpts and the

---

[1]Defendants argued (at one point during oral argument) the date of the merger of the plans, July 31, 2002, should be used for the purpose of determining the applicable interest rate under the Plan, *if the court determines the August, 2001 rate is not applicable* in calculating the opening balance.  However, since the Final Denial Letter provided to plaintiff clearly states the computation was to occur on August 1, 2002, the court bases its analysis upon that date.  Additional support for August 1, 2002 merger date's application is found in the Plan itself where § 11.13(c) ("Opening Cash Balance"); Plan Introduction (p. 3, Bates #1340); § 1.10(g) ("Cash Balance Changeover Date"); and § 1.28(e) ("Merger Date") all specifically refer to August 1, 2002 as the applicable date of the disputed calculation.

[2] Under defendant's interpretation of the Plan terms, the exact date of the transfer would not affect the rate because regardless whether merger occurred July 31 or August 1, the rate from August 2001 would apply.

- 3 -

appeals process.  (Ex.1, Bates # 1004)  Plaintiff responded on April 30, 2003, appealing the

denial to the Retirement/Welfare Plans Appeals Subcommittee.  (Ex. 1, Bates # 1007)  On July

11, 2003, Diana Parkinson-Tripp, Chairperson of the HFHS Pension Plan Appeals Subcommittee

provided plaintiff with a final decision denying the re-calculation of plaintiff's opening account

balance and explaining plaintiff's right to bring a civil claim under ERISA in this court.  (Ex. 1,

Bates # 1014-19).  Plaintiff then filed a complaint with this court on January 22, 2004, reiterating

her claim for re-calculation of the opening account balance based on the August 2002 30-year

Treasury rate of 5.08 %.

## II.  JURISDICTION

Plaintiff brings this claim under ERISA § 2, 29 U.S.C. § 1001 and ERISA § 502(a)(3), 29

U.S.C. § 1132.  Therefore, the court exercises jurisdiction under 28 U.S.C. § 1331 (2000).[3]

## III.  SUMMARY JUDGMENT

Summary judgment "shall be rendered . . . if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  In the present case, both parties seek summary judgment

on cross motions raising questions of law which the court must decide based on the parties'

---

[3]At oral argument plaintiff seemed to indicate this was an ERISA § 502(a)(1)(B) claim; however, plaintiff's motions cite the claim's jurisdiction under ERISA § 502(a)(3).  Therefore, the court considers § 502(a)(3) as the jurisdictional basis for the claim before it.

reliance upon the same facts and a dispute over the application of the law to those facts.[4]  "The

plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who

fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  The parties' bases for judgment as a matter of law will be addressed

below.

IV.  <u>**ANALYSIS OF DEFENDANT'S THRESHOLD ISSUES**</u>

    **A.  No ERISA Liability for Settlor Functions or Where Plan is ERISA § 208 Compliant**

The defendant argues that the plaintiff's claim erroneously challenges HFHS as Plan

Sponsor in making benefit decisions (a settlor function) rather than as Plan Administrator in

interpreting the Plan and administering benefits to Plan participants (a fiduciary role).  As the 6th

Circuit clarified in *Musto v. American General Corp.*, 861 F.2d 897, 911 (6th Cir. 1988), "There

is a world of difference between administering a welfare plan in accordance with its terms and

deciding what those terms are to be.  A company acts as a fiduciary in performing the first task,

but not the second."  Here, however, plaintiff has raised no challenge to defendant's action in

merging the DOHC plan into the Plan, therefore the court does not find defendant's settlor

function argument a sufficient ground for dismissal of plaintiff's motion for summary judgment.

---

[4] Both parties' theories of the case relate to the HFHS Plan's use of the August, 2001 30-year
Treasury rate of 5.48% in calculating the discounted present value of participants' benefits
(accrued through July 31, 2002 under the DOHC plan) as of August 1, 2002 for the purpose of
computing an "Opening Account Balance" under the Plan.

Defendant further asserts that plaintiff's claim incorrectly states a cause of action where the Plan has complied with ERISA § 208, 29 U.S.C. § 1058.  ERISA § 208 states:  "A pension plan may not merge or consolidate with . . . any other plan . . ., unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, . . . which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger . . . ."  Defendant cites *Adams v. Ford Motor Co.*, 847 F. Supp. 1365 (E.D. Mich. 1994) as support for the argument that where a plan has transferred sufficient assets to satisfy ERISA §208, the court will not review discretionary acts regarding the merger by the plan sponsor.  Defendant asserts that the plaintiff should be estopped in this claim by its compliance with ERISA §208 where plaintiff is seeking a benefit greater than that which she would have been entitled to under the old plan.[5]  Here, however, plaintiff does not challenge the propriety of the merger of the DOHC plan into the HFHS Plan based on ERISA § 208.  Instead, plaintiff seeks equitable redress under the HFHS Plan for an error in interpreting its own provisions for calculating her opening balance.  Therefore, the court does not address the argument, since plaintiff's complaint does not indicate an ERISA § 208 claim.

---

[5]A claim which defendant supports by claiming the benefit sought by plaintiff is greater under the HFHS Plan than that which would have been available under the DOHC plan as evidenced by HFHS Plan's use of the same interest rate as that provided for in DOHC plan § 8.2(a)(3)(B). However, plaintiff's claim challenges the language of the HFHS plan § 11.13(c) and the administrator's interpretation which leads to the use of the interest rate in § 1.07(b)(ii)(B) as that referred to by § 11.13(c).  Further, ERISA § 208, in providing that an equal or greater benefit must be provided under the new plan, does not dispositively dismiss the possibility of a claim such as the plaintiff's.

### B.  No Standing Under ERISA § 502(a)(3) for Legal Rather Than Equitable Remedy

Defendant cites *Crosby v. Bowater Inc.*, 382 F.3d 587 (6th Cir. 2004), to support its argument that the court should grant summary judgment in its favor in the case at bar.  In *Crosby*, the court explained, "the fact remains that ERISA § 502(a)(3), which authorizes only suits for injunctive or other equitable relief, does not, in most situations, authorize an action for money claimed to be due and owing"  *Id.* at 589.

However, *Crosby* is distinguished from the present case because plaintiff there had already submitted a claim for retirement benefits against defendant plan and was seeking not only a re-calculation, but also an award of the money due and owed him based on the allegedly incorrectly adopted mortality rate.  The *Crosby* plaintiff class sought "a judgment ordering the defendants to 're-compute any and all lump sum benefits previously paid,' . . . .  The court was further asked to . . . order the defendants to "pay all Plan participants or their beneficiaries who previously received a lump sum distribution . . . the difference between the amount [so] computed . . . and the lump sum amount the participant or beneficiary received from the Plan. . . ." *Id.* at 591.

Additionally, the language of ERISA § 502(a)(1)(B) provides that a participant or beneficiary may bring a civil action, among other reasons, "to clarify his rights to future benefits under the terms of the plan."  Here, neither party disputes plaintiff's vested right to future benefits under the Plan.  Rather, the choice of interest rate used to compute her current account balance affecting the *amount* of future benefits forms the basis of the dispute in the plaintiff's claim here.  Therefore, plaintiff's claim under ERISA § 502(a)(3) seeks equitable relief

- 7 -

enjoining the defendants from applying an interest rate based on Plan § 1.07 instead of the

interest rate generally provided for in I.R.C. § 417(e) and ERISA § 205(g)(3), 29 U.S.C. §1055

(2000), when merging the DOHC defined benefits plan into the HFHS defined contribution (cash

balance) plan.  Further, should the court enjoin the use of an interest rate based on an ambiguous

Plan provision, plaintiff seeks an appropriate re-calculation of her opening account balance,

transition credit, and subsequent accruals to her cash balance pension account.  Neither remedy

would require any monetary payment to plaintiff.[6]  Therefore, the plaintiff states a valid claim

for redress under ERISA § 502(a)(3) and defendant's summary judgment on this independent

basis should be denied.

### C.  Statute of Limitations

Since ERISA contains a statutory limitation only on claims brought for breach of

fiduciary duty under ERISA § 413, 29 U.S.C. § 1113, the court determines the most analogous

state law statute of limitations for the purpose of a claim brought under § 502(a)(3).  *Meade v.

Pension App. & Rev. Comm.*, 966 F.2d 190, 194-95 (6th Cir. 1992).  In the instant case, plaintiff

argues that the most analogous statute of limitations for the purpose of this claim is Michigan's

six-year limitation on breach of contract actions.  On the other hand, defendant sets forth the

Michigan Wages and Fringe Benefits Act's ("MWFBA") 12-month limitation period as most

analogous to the ERISA § 502(a)(3) claim at bar.  The question before the court regarding the

_____

[6]However, this distinction would be important in determining whether to certify the purported
class of plaintiffs similarly situated since such a re-calculation could potentially require
monetary payments if participants had retired or died in the period between the merger and re-
calculation of opening account balances, transition credits and subsequent accruals.

limitations period then is whether the present case is more analogous to a breach of contract between plaintiff and defendants, or a fringe benefit claim under the Michigan statute. "Fringe benefit" is defined in the Michigan statute as "compensation due an employee pursuant to a written contract or written policy for holiday, time off for sickness or injury, time off for personal reasons or vacation, bonuses, authorized expenses incurred during the course of employment, and contributions made on behalf of an employee." M.C.L.A. §408.471(1)(e) (West 1999). Therefore, based on the assumption that the Plan terms are a written contract and the Plan's provisions of pension benefits are "contributions made on behalf of an employee" (in this case as a participant in the Plan), the plaintiff's claim would indeed seem, upon an initial examination, to be most analogous to a claim under the provisions of the MWFBA.

The defendant therefore argues that the plaintiff's claim is time-barred because the MWFBA requires a statutory claim be filed within 12 months.[7] However, defendant ignores the fact cited by the *Murphy* court that "[s]eeking as he did, enforcement of a contract, a common-law right, the remedy afforded to plaintiff by the statute was cumulative, not exclusive." *Murphy v. Sears, Roebuck & Co.*, 190 Mich. App. 384, 388, 476 N.W.2d 639, 641 (1991). Thus, where a common-law right, such as breach of contract, is at issue, the plaintiff under the MWFBA *may* seek remedy under the MWFBA subject to the 12-month limitation for filing with the Department of Labor, *or* may institute a legal claim for breach of contract in the proper court. *Murphy* was subsequently cited by the federal district court in determining that the MWFBA 12-

---

[7]"An employee who believes that his or her employer has violated this act *may* file a written complaint with the department within 12 months after the alleged violation." M.C.L.A. §408.481(1) (West 1999) (emphasis added).

month limitations period for filing a claim was an "inapplicable [limitations period, since] [i]t pertains only to an administrative process and imposes neither a prerequisite nor a limitation on court actions." *Hebein v. IRECO, Inc.*, 827 F. Supp. 1326, 1329 (W.D. Mich. 1993) (the court applied Michigan's breach of contract limitations period to a claim by employees for severance pay as more appropriate than the MWFBA administrative limitations period as a result).

Defendant responds to *Hebein* by arguing that since, as in the instant case, ERISA is a statutory rather than common-law claim, the MWFBA 12-month period should still be considered the most analogous limitations period. As mentioned above, though, the main reason why the MWFBA might be considered to provide an appropriate limitations period is based on the assumption that the HFHS Plan can be analogized to a "written contract or . . . policy for . . . contributions made on behalf of an employee." M.C.L. 408.471(1)(e). Therefore, to consider the MWFBA, the court must assume the Plan to be a contract which would then provide the plaintiff the option of seeking statutory or common-law redress and plaintiff has clearly indicated a preference for the latter breach of contract-type action.

As a result, the court recommends that the six-year limitations period for breach of contract claims be utilized as most analogous in the present ERISA claim. M.C.L.A. § 600.5807(8) (West 2000). Since the six-year limitations period is more analogous than the MWFBA's 12-month period, summary judgment dismissal of the claim as time-barred should not be granted and the court proceeds to examine the merits of the ERISA claim.

### V.  ANALYSIS OF PLAINTIFF'S CLAIMS UNDER ERISA

####     A.  Standard of Review

The well-established standard of review for ERISA claims created by *Firestone Tire &*

*Rubber Co. v. Bruch*, provides that "a denial of benefits challenged under § 1132(a)(1)(B) is to

be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

*Firestone*, 489 U.S. 101, 115 (1989).  Plaintiff argues that because *Firestone* specifically

addresses an ERISA § 502(a)(1)(B) claim, that its holding is limited to § 502(a)(1)(B) claims.[8]

(Plaintiff's Brief Regarding Standard of Review, 1).  While *Firestone* does not specifically

address ERISA §502(a)(3) claims, the 6th Circuit has followed *Firestone* to establish the *de novo*

standard of review applied to "the plan administrator's denial of ERISA benefits, unless the

benefit plan gives the plan administrator discretionary authority to determine eligibility for

benefits *or to construe the terms of the plan*."  *Wilkins v. Baptist Healthcare System, Inc.*, 150

F.3d 609, 613 (6th Cir. 1998) (emphasis added).

Since plaintiff's § 502(a)(3) claim in the instant case parallels a denial of benefits to the

extent that it challenges Plan Administrator's interpretation of Plan terms in determining the

applicable discount interest rate, *Firestone* should apply to establish an arbitrary and capricious

standard of review, so long as the Plan's terms grant discretionary authority to the plan

---

[8]Plaintiff cites *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065,
1070 (9th Cir. 1999) (§ 502(a)(1)(B) claim which reiterated *de novo* review of factual
determinations by plan administrator in absence of grant of discretionary authority by plan,
following *Firestone*) and *Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1009 n. 8 (3d Cir.
1997) (*dicta* from footnote #8) as support for limitation of deferential review to § 502(a)(1)(B)
claims.

administrator.  Additionally, the logic used in *Firestone* supports its application to the 502(a)(3)

claim before the court here to the extent that the Court explains:  "Trust principles make a

deferential standard of review appropriate when a trustee exercises discretionary powers."

*Firestone* at 111.  The *Restatement (Second) Trusts* cited by the Court states:  "Where discretion

is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to

control by the court except to prevent an abuse by the trustee of his discretion."  *Restatement*

*(Second) Trusts* § 187 (1959).  Therefore, the deferential, arbitrary and capricious standard of

review is appropriate for plaintiff's claim here, where the Plan confers discretionary authority

upon the administrator.

      Under *Firestone*, the court must next examine the Plan provisions to determine whether

the Plan conferred discretionary authority upon the plan administrator.  *Firestone* at 115.  Here,

Plan § 7.03 grants HFHS (in its role as plan administrator):

> the powers and authority to make rules and regulations in respect
> of the Plan not inconsistent with the Plan, the Trust, the Code or
> ERISA, to determine, consistently therewith, all questions that
> may arise as to the eligibility, benefits, status and right of any
> person claiming benefits under the Plan, including (without
> limitation) Members, former Members, . . . , and subject to and
> consistent with ERISA to construe and interpret the Plan . . . .

(Ex. 3, § 7.03, Bates #1405)  The language in § 7.03 is a sufficient grant of authority to satisfy

*Firestone's* requirements for the more deferential, arbitrary and capricious standard of review

and is supported by 6th Circuit decisions which have held that there is no "magic language"

specifically referring to discretion needed in order to satisfy the requirement set forth in

*Firestone.  See Heil v. Nationwide Life Ins. Co.*, 9 F.3d 107 (table), 1993 WL 428861 (6th Cir.

1993); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (citing *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 (6th Cir. 1992)).

### 1.  Neither Did Final Denial Letter Provide Additional Denial Reason Resulting in Insufficient Notice Nor Fiduciaries Exceed Authority

#### a.  Final Denial Provides Detailed Explanation of Reason Provided in Initial Denial

Plaintiff, however, argues that despite the arbitrary and capricious standard of review, that the court should review, *de novo*, the claim before it, citing that defendants provided additional reasons in the final denial letter which prevented her from perfecting her appeal during the administrative process due to insufficient notice of their denial reasons in the initial denial letter.  The court, after comparing the initial and final denial letters, finds no additional denial reasons in the final denial letter, merely a more detailed explanation of the plan administrator's basic denial reasons.

The final denial provides a detailed justification for the basic reasons provided for in the initial denial letter.  The initial denial states:

> Section 11.13 of the Henry Ford Health System Pension Plan (Plan) document speaks to the Plan's conformity with actuarial equivalency with Code Section 417(e) and ERISA Section 205(g)(3).  In addition, in accordance with Section 1.07(b)(ii)(B) (enclosed), the specific date used to determine the interest rate for lump sum (i.e. opening balance) is the 30-year Treasury security rate in August prior to the plan year.  Thus, the August 2001, 30-year Treasury rate (which was 5.48%) is the correct rate to be used for computing your opening balance even though the conversion was done in 2002.
>
> Use of the prior year's 30-year Treasury security rate in August to determine lump sums was also done in the DOHC (Horizon) Pension Plan.

(Ex. 1, Initial Denial Letter, April 4, 2003, Bates # 1003)  Plaintiff concludes because this brief, initial denial was followed by a substantially lengthier and more detailed final denial letter which was six pages long,[9] that it included additional denial reasons which prevented her from perfecting her appeal before the Subcommittee due to lack of notice of the actual denial reason(s).

However, examination of the final denial merely demonstrates that the Subcommittee very thoroughly responded to plaintiff's appeal of the initial denial.  The letter first provides the language from challenged Plan Section 11.13(c) relied on by plaintiff in her claim:

> The Horizon Accrued Benefit for a Non-Union Employee described at 11.13(d)below shall be converted into an Opening Account Balance under this Plan on August 1, 2002, equal to the actuarial equivalent preset value of this Horizon Accrued Benefit, such actuarial equivalency to be determined under Code Section 417(e) and ERISA Section 205(g)(3).

(Ex. 1, Final Denial Letter, July 11, 2003, Bates # 1014).  The letter then proceeds to explain that based on the inclusion of the language in that section which refers to "Account Balance" and "actuarial equivalency" that Plan Sections 1.05 (defining "Account Balance") and 1.07 (defining "Actuarial Equivalent" and its computation) are specifically indicated by the reference to those terms in Section 11.13(c).  The letter continues by explaining in a very detailed manner how

---

[9] Plaintiff alleges this lengthy final denial indicates the participation of unauthorized decision-maker(s) (legal counsel).  However, Plan Section 7.04(b) states:  "A Named Fiduciary . . . may employ one or more persons to render advice with regard to any responsibility such fiduciary has under the Plan."  Therefore, without examining the factual basis for this allegation, the court finds that the Subcommittee was permitted to seek, consider and rely upon advice subject to this Plan provision in reaching its decision.  Incorporation of such advice into the denial would, therefore, be proper in the performance of its fiduciary responsibility to consider plaintiff's claim.

I.R.C. § 417(e) and ERISA § 205(g)(3) (referenced in Section 11.13(c)) are incorporated into

Section 1.07(b) which was then used to determine the applicable interest to be used in computing

plaintiff's Opening Account Balance.  Next, the Subcommittee denial examines the plaintiff's

implication that the rate utilized was unreasonable under the Plan's terms by looking to I.R.C.

§ 417(e) and ERISA § 205(g)(3) and how they are incorporated into Plan § 1.07(b).  Finally, the

letter states several reasons why the rate chosen was reasonable.

An example of the rationale provided to support 5.48% as a reasonable rate was that:

"Third, on a termination basis, the DOHC Plan was somewhat under-funded and the HFHS Plan

was somewhat over-funded . . . ."  (Ex. 1, Final Denial Letter, July 11, 2003, Bates # 1018)

Examined in isolation, such a statement could be construed as an additional reason for denial as

the plaintiff claims.  However, in the context of the introductory language two paragraphs

earlier, stating "that using the HFHS Plan's applicable interest rate as expressed in Section

1.07(b)(ii)(B) was extremely reasonable for several reasons[,]" and prefacing the above

statement with an ordinal modifier clearly indicate this as *supporting* evidence of the chosen

rate's reasonableness rather than an additional reason for denial of plaintiff's claim for re-

calculation using a 5.08% rate.

### b.  Appeals Subcommittee Did Not Exceed Its Authority by Explaining Incorporation of Statutory Provisions in the Plan

Plaintiff next encourages that *de novo* review is appropriate because Mr. Francis (in the

initial denial) and the Subcommittee (in the final denial) exceeded Plan's authority by construing

provisions of the IRC, ERISA and TR, DOHC plan, and the Plan's Summary Plan Description

(SPD).  Again, the court does not address whether plaintiff's authority supports *de novo* review

- 15 -

for this reason because the court finds inadequate evidentiary support for plaintiff's claim that

defendants "interpreted" provisions of DOHC and the Plan's SPD.  Defendants appear to

mention the DOHC plan as a defense against a potential claim that HFHS violated ERISA § 208.

Here, defendants appear to rely on the fact that the DOHC interest rate which was August of the

year prior to the distribution as support for such an argument.  Likewise, defendants' restatement

of pertinent language from the SPD provided plaintiff cannot rightfully be called an

interpretation since the final denial restates the language of the SPD and demonstrates how it

relates to the applicable Plan provisions the Subcommittee relied upon in determining that the

appropriate discount interest rate was used.

Further, the plaintiff's assertion that the plan administrator and Appeals Subcommittee

exceeded their discretion by interpreting I.R.C. § 417(e), ERISA § 205(g)(3) and TR 1.417(e)-

1(d), 26 C.F.R. § 1.417(e)-1(d), are also without sufficient substantiation.  Because the Plan did

confer discretion to consider appeals related to its administration and application of Plan terms in

§§ 7.03 and 7.11, the Appeals Subcommittee cannot be held to have exceeded that authority by

citing the applicable IRC, ERISA and TR sections which are incorporated into challenged Plan

Sections 11.13(c), and 1.05 and 1.07(b)(ii)(B) (by way of reference to the terms "account

balance" and "actuarial equivalent" in § 11.13(c)).  Even if reference to the applicable statutory

and regulatory sections could be considered "interpretation," this would not exceed the

Subcommittee's authority where the Plan's terms incorporate those statutory provisions and

compliance with them is required to fulfill the requirement of a "full and fair review" of

plaintiff's appeal.

- 16 -

The Subcommittee clearly had discretion derived from HFHS's power and authority under Plan § 7.03 to interpret the Plan terms and, by way of reference to ERISA and the I.R.C., to consider and explain such statutory requirements' as bases for the Plan's provisions.  To grant discretion to interpret the Plan without the ability to explain how it complied with applicable statutory provisions would defeat the ERISA's purpose of "provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously."  *Perry v. Simplicity Engineering*, 900 F.2d 963, 967 (6th Cir. 1990) (citing 1974 *U.S. Code Cong. & Admin. News* 5000).  Therefore, the court finds no reason to grant *de novo* review on this basis.

### 2.  Appeals Subcommittee Authorization Substantially Complied with Plan Requirements Therefore Arbitrary and Capricious Review Appropriate

Plaintiff points to various individual sections of Article 7 as support for the argument that the Plan did not confer discretionary authority upon the committee which decided her claim and appeal.  The court disagrees that the Plan and defendant's authorization documents did not confer adequate discretion upon the Appeals Subcommittee for the following reasons. Read as a whole, Plan Sections 7.01 "Administration by Employer," 7.03 "Powers and Authority," 7.04 "Certain Fiduciary Provisions," and 7.11 "Claims Procedure" describe the administration of the Plan and the administrator's authority under the Plan sufficiently to meet the standards established in *Firestone* above.  HFHS, as plan administrator considers members' claims, and denial of claims must be submitted to the "Committee" mentioned in § 7.11. In establishing that the Appeals Subcommittee was empowered and authorized under the Plan to consider participants' appeals, the court examines the Plan's "Claims Procedure."  By the

language of the Plan, "If any Member . . . shall claim benefits for which HFHS has determined

he is ineligible, or shall dispute the amount or timing of benefits determined by HFHS to be

payable under the Plan, such person shall be entitled to make a claim for benefits pursuant to this

Section 7.11."  (Ex. 3, Plan § 7.11(b), Bates # 1407)  Because Section 7 does not define

"Committee," the court refers to § 1.12 which indicates "'Committee' shall have the meaning set

forth at Section 7.01."  (Ex. 3, Plan § 1.12, Bates # 1348)  Finally, Section 7.01 discusses in part

that:

> [A]ction on behalf of HFHS . . . may be taken by . . . the
> following:
>> (c)  Any person or persons . . . or committee, to whom
>> responsibilities for the operation of the Plan were allocated
>> by HFHS, by resolution of the Board of Trustees or by
>> written instrument executed by the chief executive officer
>> of HFHS and filed with its permanent records, but action of
>> such . . . committee (hereinafter "Committee") shall be
>> within the scope of said allocation.

(Ex. 3, Plan § 7.01, Bates # 1404)  Plaintiff argues and defendant concedes that the written

instruments substantiating that the Appeals Subcommittee members were appointed in

accordance with the Plan can no longer be located.  Defendant has however presented substantial

documentary support to establish that a claim and appeals process existed and that the

Subcommittee members who determined Ms. Hampton's appeal were authorized members of

that decision-making body.  The court finds that sufficient documentation has been provided to

establish the authority of the Appeals Subcommittee under the Plan because, *inter alia*, the

Administrative Retirement Committee minutes from the May 28, 1992 meeting describing the

- 18 -

Appeals Process authorizes the delegation of final appeal authority to the Appeals

Subcommittee.  (Ex 8, Bates # 1606-07)

Plaintiff then asserts that the failure to appoint one of the Appeals Subcommittee

members, Mr. Peterson in any signed writing provides plaintiff cause to claim a lack of a "full

and fair review" of her appeal.  Plaintiff urges the court to follow *Sanford v. Harvard Indus.,*

*Inc.*, 262 F.3d 590 (6th Cir. 2001), providing for *de novo* review where unauthorized decision

makers determined an appeal stating:

> [D]eferential review under the 'arbitrary and capricious' standard
> is merited for decisions regarding benefits when they are made in
> compliance with plan procedures.  When an unauthorized body
> that does not have fiduciary discretion to determine benefits
> eligibility renders such a decision, however, this deferential review
> is not warranted.

*Id.*, at 597 (internal citations omitted).  Here, however, the appeal *was* decided by an authorized

body.  While defendant was unable to produce documentation of Mr. Peterson's appointment to

the Appeals Subcommittee, his predecessor Mr. Langham was the appointed Employee

Relations representative to the Subcommittee.  Therefore, the court finds defendants'

explanation of Mr. Peterson's participation on the Appeals Subcommittee sufficient in

substantially complying with the requirements for a procedurally adequate review of plaintiff's

appeal.[10]

_____

[10]The Appeals Subcommittee's minutes do not specifically identify Mr. Peterson's position or
basis for appointment to the Subcommittee; however, defendant's counsel represented at oral
argument during the Motion hearing on May 19, 2005 that Mr. Peterson occupied an Employee
Relations position in HFHS and replaced the gentlemen who had been the previous Employee
Relations representative on the committee (Ray Langham, VP, Employee & Labor Relations).
The August 15, 1996 Committee meeting minutes Item #6 contains the suggestion that
"someone from Employee Relations be appointed to the Appeals Subcommittee."  (Ex. 8, Bates

Additional support for this finding is provided by the 6th Circuit's holding that substantial compliance with ERISA § 503 requirements is sufficient to satisfy a Plan's procedural obligations. *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir. 1996). The *Kent* court held that if "claim communications as a whole are sufficient to fulfill the purposes of [29 U.S.C.] § 1133 the claim decision will be upheld *even if a particular communication does not meet those requirements.*" *Id.* (emphasis added). Analogous here is the proposition that where the Plan has granted discretion to the Appeals Subcommittee and substantially complied with its provisions regarding the documenting of the members assigned to the Subcommittee for over 30 years, the decisions made by the Subcommittee should be afforded the deference afforded by *Firestone*.

Finally, plaintiff fails to demonstrate any prejudice resulting from the defendants' lack of an appointment document for Mr. Peterson to the Appeals Subcommittee. *Cf., Atwood v. Newmont Gold Co.*, 45 F.3d 1317 (9th Cir. 1995) (evidence showing more than mere apparent conflict of interest in deciding claim required for *de novo* review). For the aforementioned reasons, the court concludes that the arbitrary and capricious standard of review is proper for the claim presented for review. This determination is again supported, as cited above, by ERISA's "primary goal [of] provid[ing] a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Perry*, 900 F.2d at 967 (citing 1974 *U. S. Code Cong. & Admin. News* 5000).

---

# 1652). Then, on November 5, 1996, the Committee meeting minutes Item #8 identifies the "new Appeals Subcommittee: D. Mazurkiewicz, R. Langham, and D. Parkinson-Tripp." (Ex. 8, Bates # 1649).

### B. SPD Differs from Plan Terms, Therefore 5.08% Rate Should Be Used

Barring a decision to review *de novo*, plaintiff offers a final argument which must be addressed before determining whether the defendants' decision to utilize a discount interest rate of 5.48% was arbitrary and capricious. Plaintiff claims that the language of the Summary Plan Description provided participants in June, 2002 differed from the Plan terms and therefore, the court must favor the rate suggested by the language of the SPD over that which the plan administrator chose based on its interpretation of the Plan's provisions. The 6th Circuit has held: "[S]tatements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern." *Edwards v. State Farm Mut. Automobile Ins. Co.*, 851 F.2d 134, 135 (6th Cir. 1988). The court finds the language cited by plaintiff in this instance insufficient to create a conflict with the Plan.

Plaintiff focuses on the SPD language stating: "If you were an employee and a participant in your Employer's Prior Plan immediately before the Cash Balance Changeover Date, your accrued benefit on that date was converted into an initial cash balance of equal value, based on your life expectancy and assumed interest rates at the time." (Ex. 7, Bates # 1514) Plaintiff emphasizes "at the time" as support for the argument that this SPD promised the August 2002 30-year Treasury rate. However, the court finds this to be too narrow a reading of the language which in context simply indicates to the participant that a determination or calculation of some type must occur to reach such an "assumed interest rate[] at the time." The lone phrase plaintiff relies upon is not a specific enough to constitute a representation the August, 2002 interest rate would be applied. At most, a participant reading this simplified language in the

SPD would be put on notice that an assumption or calculation was going to be made regarding the interest rate in calculating her initial cash balance.  For this reason, the plan administrator and Appeals Subcommittee decisions must be reviewed to determine whether the denial of the plaintiff's request for a re-calculation of her "Opening Account Balance" was arbitrary and capricious.

### C.  Plan Administrator and Appeals Subcommittee's Denial Was Not Arbitrary and Capricious Application of Plan's Provisions

Turning to the substantive basis of the plaintiff's claim, the court examines whether HFHS' choice of the discount rate used in the calculation of the plaintiff's "Opening Account Balance" was arbitrary and capricious.  "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action.  When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."  *Williams v. Intl. Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)(internal citations and quotations omitted).  Based on the thorough, "reasoned" explanation provided by defendants via the Appeals Subcommittee, the court finds that the decision to utilize 5.48% as the discount rate in calculating participants' opening account balances was not arbitrary and capricious and therefore violates neither the Plan's provisions nor ERISA's statutory requirements.

The court again turns to the Appeals Subcommittee's final denial letter to determine whether defendants provided a "reasoned explanation" for the plan administrator's decision to utilize the 5.48% interest rate to compute the participants' opening account balance under the

- 22 -

Plan.[11]  As previously discussed, the final denial, dated July 11, 2003, and signed by Ms. Parkinson-Tripp, presented a detailed explanation which related the SPD language to that of the Plan which it represented, proceeded to explain the relation of those terms to the Plan section defining the interest rate applied from August 2001, and presented the statutory provisions which supported the use of the Plan's rate.  This letter continued by explaining that the rate suggested by plaintiff would not be a possible choice under the statutory provisions supporting such calculations because they either indicated a calculation based on the 30-year rate from the month prior to the distribution or a lookback period prior to the plan's stability period at which the interest rate was determined.  I.R.C. § 417(e)(3)(A)(ii)(I).

Further, the Appeals Subcommittee explained that it had examined plaintiff's assertion that Plan § 11.13(c) did not mention the rate found in § 1.07, reasoning that § 1.07 was the appropriate Plan provision generally utilized for conversions into lump sum equivalents because it contained the Plan's stability and lookback periods.  The letter provided several reasons to substantiate this rationale.  First, that § 1.07 represented the Plan's incorporation of the I.R.C. § 417(e) rate for determining lump sum equivalent calculations.[12]  Second, that the rate found in § 1.07 was the rate provided in the 204(h) Notice mailed to participants in June illustrating an example of how "Opening Cash Balances" were anticipated to be calculated.  (Ex.6, Bates #

---

[11] Final Denial found at Ex. 1, Bates # 1014 - 1019.

[12] I.R.C. § 417(e) states that it "is analogous to [the] language of ERISA § 205(g)(3)."  I.R.C. § 417(e) is further supported by TR 1.417(e)-1(d)(3)) which provides that the general interest rate will be the 30-year Treasury rate "for that month," while TR 1.417(e)-1(d)(4) explains that determination of the interest rate period will be made based upon a plan's "lookback provision . . ."  26 C.F.R 1.417(e)-1(d)(3) & (4).

1499 (under heading "Annuity/Lump Sum Conversion Rate: 5.48%"))  Finally, that the rate represented by § 1.07(b)(ii)(B) represented the "legal requirements that would generally apply" referred to in the SPD dated August 1, 2002.  (Ex. 7, Bates #1514)

Finally, the Subcommittee included information which supported the reasonableness of the rate chosen and explained that its inclusion served to ensure that plaintiff's appeal received a "full and fair review."  First, the letter explains that the opening balance as calculated under the § 1.07, August, 2001 rate resulted in an account balance equal to the payment under the previous DOHC plan, had a lump-sum payout been available in that plan.  Second, that the usage of the rate chosen avoided the possibility that participants who retired on August 1, 2002 under the HFHS Plan would have received a greater benefit than the value of the annuity they would have received under the DOHC plan on July 31, 2002.  Next, the letter explained that the rate chosen was fair in its treatment of the former DOHC participants compared to those HFHS participants whose benefits were being valued as a lump sum amount during 2002 because the Plan Administrator utilized the same rate for both classes of participants.

The court finds that given the significant deference due the plan administrator under the arbitrary and capricious standard of review, that the Appeals Subcommittee's final denial provided "a reasoned explanation, based on the evidence" for the plan administrator's selection of the August, 2001 30-year Treasury "lookback" period rate in calculating plaintiff's "Opening Cash Balance" according to the Plan's terms.  *Williams*, 227 F.3d at 712.  Consequently, the plan administrator's and Appeals Subcommittee's decisions were not arbitrary and capricious and summary judgment is granted in favor of defendants in their motion for judgment.

- 24 -

Even if the August, 2001 rate were not clearly indicated by the Plan's terms, the plaintiff's August, 2002 rate of 5.08% would not be sufficiently appropriate to grant judgment in her favor. The Subcommittee correctly reasoned that the August, 2002 rate asserted by plaintiff was not reasonable for several reasons; however, the court emphasizes those supported by a reading of the Treasury Regulation cited by both parties. TR 1.417(e)-1(d) explains the language provided by I.R.C. § 417(e), which provides that "'applicable interest rate' means the annual rate of interest on 30-year Treasury securities for the month before the date of distribution *or such other time as the Secretary may by regulations prescribe*." I.R.C. § 417(e)(3)(A)(ii)(II) (emphasis added). As discussed below, the Plan, as explained by the Appeals Subcommittee, relies upon the determination provided by the latter portion of IRC § 417. However, it is important to note that if credence were not given to this claim, the former, more general rule would control and force utilization of the July 2002 rate (5.39%)[13] ("[the rate] for the month before the date of distribution"). Equally important, regarding the claim before the court, is that plaintiff insists that a reading of the Treasury Regulation provides support for her August 2002 rate.

Therefore, to complete the discussion regarding why the August, 2002 rate would not apply, even if the Plan Administrator's determined rate were found to be arbitrary and capricious, the court briefly examines the regulatory provisions cited. TR 1.417(e)-1(d)(1) states:

> General rule. A defined benefit plan must provide that the present
> value of any accrued benefit and the amount . . . of any

---

[13]2002-2 C.B. 379, 2002 WL 1769454.

>distribution, including a single sum, must not be less than the
>amount calculated using the applicable interest rate described in
>paragraph (d)(3) of this section *(determined for the month
>described in paragraph (d)(4) of this section)*

26 C.F.R. 1.417(e)-1(d)(1) (emphasis added).  The language of TR 1.417(e)-1(d)(1) cited above

clearly indicates that TR 1.417(e)-1(d)(3) and TR 1.417(e)-1(d)(4) are to be construed together

to determine which period's applicable 30-year Treasury interest rate should be utilized for

calculating a lump sum benefit's actuarial equivalence.  Plaintiff encourages that the language of

TR 1.417(e)-1(d)(3)(I) (the general rule regarding "Applicable interest rate") stating, "The

applicable interest rate for a month is the annual interest rate on 30-year Treasury securities as

specified by the Commissioner for that month. . . . ," be read in isolation to support her claim

that the August, 2002 rate prevail.  26 C.F.R. 1.417(e)-1(d)(3).  However, the court reads the

general rule as merely stipulating the usage of the 30-year Treasury rate.  Further, TR 1.417(e)-

1(d)(4) (the general rule regarding "Time for determining interest rate") states "the applicable

interest rate to be used for a distribution is the rate determined under paragraph (d)(3) of this

section for the applicable lookback month." *Id.* at § 1.417(e)-1(d)(4).  Once this section is

appropriately considered under the reading of the Treasury Regulation, it is clear the regulation

provides for usage of the same 30-year Treasury interest rate to be applied but instead of in the

month prior to the distribution discussed in I.R.C. § 417(e), the Secretary in the Treasury

Regulation provides the plan administrator with the option of specifying a "lookback" month in

which to designate the interest rate for calculations of lump sums under the plan.

In the case at bar, then, if the district court were to find that the Appeals Subcommittee's

relationship of Plan § 11.13(c) provided insufficient nexus to § 1.07 to justify HFHS' utilization

- 26 -

of the interest rate from the lookback period (August, 2001) of 5.48%, it should also refuse to find the August, 2002 rate of 5.08% (encouraged by plaintiff) applicable because TR 1.417(e)-1(d)(3) cannot be read in isolation to provide a substantive applicable interest rate.  In such case, the court would be forced to rely upon I.R.C. § 417(e) (analogous to ERISA § 205(g)(3)) which specifies utilization of the rate from the month prior to the distribution (here the July, 2002 rate).  Therefore, even if, defendants' Appeals Subcommittee could be found to have acted arbitrarily or capriciously in using the August, 2001 "lookback" rate of 5.48%, the court finds that plaintiff's August, 2002 rate would be inappropriate.

## VI.  CONCLUSION

As provided above, the court recommends that defendants' motion for summary judgment based on the arbitrary and capricious standard of review be granted.  Judgment as a matter of law is appropriate where, as here, the defendants substantially complied with the procedural protections afforded participants under ERISA and the Plan's provisions.  Furthermore, the rate chosen by the Plan Administrator was the same rate and method utilized for all lump sum distribution calculations under the Plan.  The appropriate Plan terms were referred to in § 11.13(c) by reference to their definition in Article I of the Plan specifying how they would be calculated under the Plan's provisions in accordance with I.R.C. § 417(e) (ERISA § 205(g)(3)) and T.R. 1.417(e)-1(d).  This rational basis for and the Appeals Subcommittee's detailed explanation of the rate chosen were sufficient under the deferential standard applicable to plan administrators in such situations to grant judgment as a matter of law in defendants' favor in this instance.

- 27 -

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


       s/Virginia M. Morgan                 
VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE


Dated:   July 1, 2005   

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AQUANETTE HAMPTON,
individually and on behalf of all
others similarly situated,

      Plaintiff,                    CIVIL ACTION NO. 04 CV 70221 DT

      v.                              DISTRICT JUDGE BERNARD A. FRIEDMAN

HENRY FORD HEALTH SYSTEM      MAGISTRATE JUDGE VIRGINIA MORGAN
and HENRY FORD HEALTH SYSTEM
PENSION PLAN,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record herein by electronic means or U.S. Mail on July 1, 2005.

                    s/Jennifer Hernandez
                    Case Manager to
                    Magistrate Judge Morgan

---