UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


AQUANETTE HAMPTON,

       Plaintiff,                             Civil Action No.
                                            04-CV-70221-DT

vs.

                                           HON. BERNARD A. FRIEDMAN

HENRY FORD HEALTH SYS., ET AL.,

       Defendant.
_____/


**OPINION AND ORDER ACCEPTING IN PART AND REJECTING IN PART THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


      This matter is presently before the Court on cross Motions for Summary Judgment. Magistrate Judge Virginia Morgan has submitted a Report and Recommendation ("R & R"), in which she recommends that the Court grant Defendants' motion and deny Plaintiff's motion. Both Aquanette Hampton ("Plaintiff") and Henry Ford Health System and Henry Ford Health System Pension Plan ("Defendants") object to certain findings by the Magistrate Judge's R & R. After having reviewed this matter *de novo*, as required by Fed. R. Civ. P. 72(b), the Court shall grant Defendants' Motion for Summary Judgment.

**I.**      **HISTORY OF THE CASE**

      **A.**      **FACTUAL BACKGROUND**

      Plaintiff was a surgical nurse at Detroit Osteopathic Hospital Corporation ("DOHC") from August 21, 1978, until August 1, 2002. (Pl.'s Comp. ¶ 9.) Like other non-union

1

employees, she participated in the DOHC Retirement Income Plan ("DOHC/Horizon Plan"). (Id. at ¶ 10.)  During her time as a member in the DOHC/Horizon Plan, Plaintiff was credited with an "Accrued Benefit," which was to be payable as a monthly annuity upon retirement. (J.S., Doc. #50, Ex. 9, pp. 1074-75, 1103-06.)[1]  On July 31, 2002, the DOHC/Horizon Plan was merged into the Henry Ford Health System Pension Plan ("HFHS Plan"); therefore, on August 1, 2002, Plaintiff had an "Opening Account Balance" as a new participant in the HFHS Plan. (Def.'s Br. Supp. Mot. Summ. J. under either standard, 1.)

The issue here is the amount of Plaintiff's "Opening Account Balance" for the HFHS Plan.  Plaintiff and Defendants disagree about the "applicable interest rate" to be used in converting Plaintiff's "Accrued Benefit" under the DOHC/Horizon Plan to the Plaintiff's "Opening Account Balance" for the HFHS Plan.  While both parties agree that Internal Revenue Code § 417(e) and ERISA § 205(g)(3) require the use of an "applicable interest rate" that is the average monthly "rate of interest on 30-year Treasury securities," the parties disagree as to the particular month from which to derive that rate.  Defendants used the interest rate on 30-year Treasury securities from August 2001 (5.48%) to convert Plaintiff's "Accrued Benefit" into an "Opening Account Balance."  (Def.'s Br. Supp. Mot. Summ. J. under arbitrary and capricious standard, 3-5.)  Plaintiff, however, asserts that Defendants should have used the interest rate from August 2002 (5.08%) to make the conversion.  (Pl.'s Br. Supp. Mot. Summ. J., 3-4.)  A lower interest rate generates a larger present value and thus a larger opening account balance; on the other hand, a higher interest rate generates a smaller present value and thus a smaller opening

---

[1]  The referenced exhibits correspond to the exhibits included in the Joint Submission of documents exchanged between the parties and filed on 5-15-05 as Document #50 (on Docket Report).

account balance.  (Id.)  Thus, the Plaintiff wants the lower interest rate (5.08%) to be used, while the Defendants want the higher interest rate (5.48%) to be used.

Plaintiff claims that her "Opening Account Balance" for the HFHS Plan was undervalued by approximately $9,000, because Defendants used the wrong month to derive the "applicable interest rate."  (Id.)  Under Defendants' calculations, Plaintiff was allotted an "Opening Account Balance" of $102,961; whereas, under Plaintiff's calculations, the value was found to be $112,130.  (Id. at 4.)  Plaintiff wants her "Opening Account Balance" to be recalculated, using the interest rate from August 2002.  Defendants contend that no such recalculation need be done, as they have substantially complied with the Plan's procedures and applicable laws.

### B.    PROCEDURAL HISTORY

On March 13, 2003, Plaintiff sent a letter to the HFHS Plan Administrator to request that her "Opening Account Balance" be recalculated by using the interest rate from August 2002 (5.08%), which she asserted was the correct rate to use under Section 11.13 of the HFHS Plan. (J.S., Doc. #50, Ex. 1, p. 1001.)  On April 4, 2003, Defendants sent a letter denying Plaintiff's request and explaining that the calculation complied with Section 1.07(b)(ii)(B) of the HFHS Plan and with the "actuarial equivalency" value stated in IRC § 417(e) and ERISA § 205(g)(3). (Id. at 1003-06.)  On April 30, 2003, Plaintiff appealed Defendants' decision.  (Id. at 1007.)

Defendants scheduled Plaintiff's appeal to be heard before the HFHS Appeals Subcommittee in June 2003, but Plaintiff sent a letter stating that she could not attend the meeting.  (Id. at 1011.)  Defendants claim that they discussed rescheduling the Appeals Subcommittee meeting with Plaintiff, but that Plaintiff declined the offer and stated that her reasons for the appeal were included in her appeal letter.  (Id. at 1012-13.)  In mid-July,

3

Defendants sent a letter to Plaintiff that explained that the Appeals Subcommittee had reviewed and denied Plaintiff's claim and consequently would not recalculate her "Opening Account Balance." (Id. at 1014-19.) The letter also stated that the Appeals Subcommittee's decision is considered to be Defendants' final and binding interpretation of the HFHS Plan. (Id. at 1019.)

Having apparently exhausted her administrative remedies, Plaintiff filed an action in this Court, under ERISA § 502(a)(3), to enforce the terms of the HFHS Plan. (Pl.'s Comp., 7-9.) Plaintiff brought the claim as a class action on behalf of other non-union employees who wanted their "Opening Account Balances" to be recalculated, by using the August 2002 interest rate instead of the rate from August 2001. (Pl.'s Comp., 10-11.) Plaintiff and Defendants both moved for Summary Judgment. The Magistrate Judge conducted a hearing on the cross-motions (as well as on Plaintiff's Motion to Certify Class and Defendants' Motion to Compel Discovery). The Magistrate Judge issued an R & R on the cross-motions for Summary Judgment. Both parties then filed objections to the R & R. The Magistrate Judge also issued Orders denying the two other motions.

## II.   MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Magistrate Judge recommended that the Court grant the Defendant's Motion for Summary Judgment based on the arbitrary and capricious standard of review. (Mag. J. R&R, 27.) On the other hand, the Magistrate Judge recommended denial of Defendant's Motion for Summary Judgment based on Defendants' claim that it acted in a settlor function and was therefore immune from ERISA liability. (Id. at 5.) Likewise, the Magistrate Judge recommended denial of Defendant's Motion for Summary Judgment based on Plaintiff's not having stated a valid claim for redress under ERISA § 502(a)(3). (Id. at 8.) Further, the

Magistrate Judge recommended denial of Defendant's Motion for Summary Judgment based on the claim as time-barred by the statute of limitations.  (Id. at 10.)  As for the Plaintiff's motions, the Magistrate Judge found that *de novo* review of the Appeals Subcommittee's decision, as well as the use of the interest rate from August 2002, would be inappropriate.  (Id. at 17, 27.)

In addition to its R & R, the Magistrate Judge also issued Orders that denied Plaintiff's Motion to Certify Class and denied Defendants' Motion to Compel Discovery.

## III.    ANALYSIS OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### A.    ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW

The Magistrate Judge recommended the granting of Defendant's Motion for Summary Judgment based on the arbitrary and capricious standard of review.  (Mag. J. R&R, 27.)  The Magistrate Judge first found that the Sixth Circuit follows a *de novo* standard of review when considering the denial of ERISA benefits, but that it follows an arbitrary and capricious standard if the plan administrator has discretion in the interpretation of the plan and benefits.  (Id. at 11.) The Magistrate Judge then found that Section 7.03 of the HFHS Plan provided the plan administrator with discretionary authority and thus applied the arbitrary and capricious standard of review.  (Id. at 12.)  Plaintiff objects to the use of such a standard of review and asserts that the Court should use a *de novo* standard to review HFHS's denial decision.

The Court accepts and adopts the Magistrate Judge's recommendation of an arbitrary and capricious standard of review.  In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989), the Supreme Court explained that "ERISA explicitly authorizes suits against fiduciaries and plan administrators to remedy statutory violations, including breaches of fiduciary duty and lack of compliance with benefit plans."  The Supreme Court explained that "a denial of benefits

5

challenged under § 1132(a)(1)(B) [ERISA § 502(a)(1)(B)][2] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone</u>, 489 U.S. at 115.

Although the <u>Firestone</u> Court specifically addressed an ERISA § 502(a)(1)(B) claim, the Sixth Circuit apparently does not interpret the finding so narrowly.  In <u>Wilkins v. Baptist Healthcare Sys., Inc.</u>, 150 F.3d 609, 617 (6th Cir. 1998), which involved an ERISA § 502(a)(3) claim, the Sixth Circuit explained that the "standards of review for determining ERISA denial-of-benefits claims are well-established."  That standard of review seems to turn not on the particular subpart of ERISA § 502 under which the claim has been filed, but instead on whether the plan administrator has discretionary authority.  For instance, in <u>Wilkins</u>, the Sixth Circuit explained that it "review[s] *de novo* the plan administrator's denial of ERISA benefits, unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  150 F.3d at 613 (citing Firestone, 489 U.S. at 115).  Likewise, in <u>McDonald v. Western-Southern Life Ins. Co.</u>, 347 F.3d 161, 168 (6th Cir. 2003), the Court of Appeals stated that it is a "general principle of ERISA law" that a court will not review a plan administrator's denial of benefits under a *de novo* standard if the plan

---

[2]As codified at 29 U.S.C.A. § 1132, individuals can bring civil actions against retirement plan administrators for alleged violations of the Employee Retirement Income Security Program ("ERISA").  More specifically, an ERISA § 502(a)(1)(B) claim can be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan."  On the other hand, an ERISA § 502(a)(3) claim can be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan."

6

administrator has discretion to interpret the plan.  See also Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376 380 (6th Cir. 1996) (referencing "general trust law principles" to conclude that if "the plan grants the administrator authority to determine eligibility for benefits or to construe the terms of the plan," the court should apply the "highly deferential arbitrary and capricious standard of review").  Thus, if the plan administrator has discretionary authority, then that administrator's decisions in distributing the plan's benefits are reviewed under a more deferential standard than *de novo* review.

The issue now becomes whether the HFHS Plan itself granted such discretionary authority to the plan administrator.  As stated in Yeager, the Sixth "[C]ircuit has interpreted *Bruch* [Firestone] to require that the plan's grant of discretionary authority to the administrator be 'express.'" Yeager, 88 F.3d at 380 (citing Perry v. Simplicity Eng'g, 900 F.2d 963, 965 (6th Cir. 1990).  Therefore, it is necessary to "examine the Plan language to determine whether the administrator is given such discretion."  Id.  If such discretion is given in the Plan in this case, then the highly deferential standard is appropriate.

Here, the HFHS Plan itself grants discretionary authority to the plan administrator.  In particular, Section 7.03 expressly provides such power.  Section 7.03 states:

> HFHS shall have any and all *power and authority* which shall be necessary, properly advisable, desirable or convenient to enable it to carry out its duties under the Plan . . . *not inconsistent with the Plan, the Trust, the Code or ERISA, to determine, consistently therewith, all questions that may arise as to the eligibility, benefits, status and right of any person claiming benefits under the Plan*, including (without limitation) Members, former Members, . . . and *subject to and consistent with ERISA to construe and interpret the Plan* and trust agreement(s) entered into in connection with the Plan and correct any defect, . . . such action to be conclusive on all persons claiming benefits under the Plan.

7

J.S., Doc. #50, Ex. 3, p. 1405 (emphasis added).

The HFHS plan administrator calculated Plaintiff's "Opening Account Balance" in a manner that was not only consistent with the HFHS Plan, but with IRC and ERISA as well. Under the Plan, a participant's "Account Balance" is "the value of the Member's benefit payable under this Plan . . . expressed as a lump sum." (J.S., Doc. #50, Ex. 3, p. 1342)  Section 11.13 of the HFHS Plan explains how the present value of the lump sum earned under the DOHC/Horizon Plan is distributed to the HFHS Plan.  According to Section 11.13, "effective at the close of business on July 31, 2002, the accrued benefits (and related assets) of certain non-union employees of Horizon were transferred from the Horizon Plan to this Plan."  (Id. at 1450.)  In particular, Section 11.13(c) states: "The Horizon Accrued Benefit for a Non-Union Employee . . . shall be converted into an Opening Account Balance under this Plan on August 1, 2002 equal to actuarial equivalent present value of his Horizon Accrued Benefit, such actuarial equivalency to be determined under Code Section 417(e) and ERISA Section 205(g)(3)."  (Id. at 1451.)

The aforementioned sections of the Internal Revenue Code ("IRC") and ERISA each contain identical language as the other.  Both IRC § 417(e) and ERISA § 205(g)(3) provide that the determination of the present value of a distribution of an annuity should be calculated using an "applicable interest rate," which is defined as "the annual rate of interest on 30-year Treasury securities for the month before the date of distribution or such other time as the Secretary of the Treasury may by regulations prescribe."  (IRC § 417(e), as codified at 26 U.S.C.A. § 417(e), and ERISA § 205(g)(3), as codified at 29 U.S.C.A. § 1055(g)(3).)  Treasury Regulation § 1.417(e)-1(d)(4) allows a plan provider to set a "lookback month that is used to determine the applicable interest rate."  Treas. Reg. § 1.417(e)-1(d); (J.S., Doc. #50, Ex. 1, pp. 1052-55.)  That "lookback

month" may be any one of the first through fifth months "preceding the first day of the stability period . . . . This stability period may be one calendar month, one plan quarter, one calendar quarter, one plan year, or one calendar year" before the date of distribution. Id. Treasury Regulation 1.417(e)-1(d)(4) also requires that the "plan must specify the lookback month." Id.

To summarize, the plan administrator has the discretionary authority to convert the lump sum distribution from the DOHC/Horizon Plan into the "Opening Account Balance" of the HFHS plan, as long as that interpretation is in accordance with IRC § 417(e) and ERISA § 205(g)(3). Those sections require the use of an interest rate on 30-year Treasury securities during a month before the date of distribution—either the month previous to the month of distribution or to a specified lookback month.

It is important that the provisions of the Plan be "construed as a whole" and in "relation to context," as required by the HFHS Plan itself. (J.S., Doc. #50, Ex. 3, p. 1417.) Thus, HFHS Plan § 1.07, entitled "Actuarial Equivalent," sheds further light on the issue, by explaining what is required for the calculation under HFHS Plan § 11.13, which itself calls for an actuarial equivalency value. Section 1.07(b)(ii)(B) states that for "any distribution which is paid as lump sum or commences as a single life annuity[,] . . . interest shall be based upon the annual interest rate on 30-year Treasury securities . . . [for] August prior to the Plan Year during which the distribution is made, for distributions made on and after January 1, 1998." (Id. at 1343-44.) Thus, regardless of what month in the year 2002 that the lump sum distribution was made, the applicable interest rate should be derived from the month of August from the previous year, 2001, as expressly stated in the Plan. The plan administrator's determination to use the interest rate from August 2001 is therefore consistent with the Plan, IRC, and ERISA.

In selecting the rate of interest from August 2001, the plan administrator rationally interpreted the language included within the Plan, IRC, and ERISA.  This is all that is required to pass the arbitrary and capricious standard of review.  As the Sixth Circuit has explained, "[in] applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was 'rational in light of the plan's provisions.'  Stated differently, when it is possible to offer a reasoned outcome, that outcome is not arbitrary or capricious."  Williams v. Int'l Paper Co., 227 F.3d 706, 712 (6th Cir. 2000) (quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988)).  In this case, the Defendants' interpretation of the plan was rational, and therefore adequate to pass the arbitrary and capricious standard of review.

Although the HFHS plan administrator had discretionary authority and was thus subject to a highly deferential standard of review, Plaintiff still contends that a *de novo* review should be conducted because Plaintiff asserts that she did not receive adequate notice about the denial of her claim as it made its way through the HFHS appeals process.  (Pl.'s Br. Supp. Mot. Summ. J., 12.)  The Magistrate Judge correctly rejected this argument and found that proper notice had been given to Plaintiff.

Defendants' Initial Denial Letter provided Plaintiff with the basis for the denial of Plaintiff's request for a recalculation of her "Opening Account Balance."  In particular, the Initial Denial Letter referenced Section 11.13 of the HFHS Plan and the relevant IRC and ERISA sections to explain how the calculation was made.  (J.S., Doc. #50, Ex.1, pp. 1003-06.)

In addition, the Initial Denial Letter presented the opportunity of an appeal to Plaintiff.  (Id. at 1004.)  When Plaintiff stated that she could not attend the appeals meeting, Defendant offered, on more than one occasion, to reschedule the meeting, or to conduct the meeting by

10

phone, or to allow Plaintiff to send a representative to the meeting.  (Id. 1012-13.)  Defendant

made such overtures even though the Plaintiff had sent a letter stating that the "reasons for my

claim are stated in my claim letter" and that she would not attend the meeting to review her

appeal.  (Id. at 1011.)  Finally, as the Magistrate Judge correctly found, the Defendants' Final

Denial Letter "provide[d] a detailed justification for the basic reasons provided for in the initial

denial letter" and carefully walked Plaintiff through both the calculation process and the Appeals

Subcommittee's reasoning behind its denial.  (Mag. J. R&R, 13; J.S., Doc. #50, Ex. 1, pp. 1014-

19)  These communications further show that Defendants, in denying Plaintiff's claim, did not

act in an arbitrary or capricious manner.  Thus, the Magistrate Judge correctly granted

Defendants' Motion for Summary Judgment based on the arbitrary and capricious standard of

review.

### B.      NO SETTLOR FUNCTION AND ERISA IMMUNITY

The Magistrate Judge recommended the denial of Defendants' Motion for Summary

Judgment based on Defendants' claim that the plan administrator acted in a settlor function when

it decided the calculation of benefit payments and was therefore immune from ERISA liability.

(Mag. J. R&R, 5.)  The Court accepts and adopts the Magistrate Judge's recommendation.

Plaintiff is not issuing a challenge to the design or amendment of the Plan.  (Pl.'s Br. in

Opp'n to Def.'s Mot. Summ. J. under either standard, 12.)  Instead, Plaintiff is challenging

whether the use of the interest rate from August 2001 is correct under the terms of the HFHS

Plan.  (Id.)  The interpretation of a plan's terms and implementation of those terms, as conducted

by a plan administrator, are done in a fiduciary role.  In Musto v. American General Corp., 861

F.2d 897, 911 (6th Cir. 1988), the Court stated that "[t]here is a world of difference between

11

administering a welfare plan in accordance with its terms and deciding what those terms are to be.  A company acts as a fiduciary in performing the first task, but not the second."  In the case at hand, Plaintiff is only challenging whether Defendants followed the terms of its own Plan in calculating the benefits to be paid to Plaintiff.  Thus, Defendants' conduct in the administration of the terms of its Plan were done in a fiduciary capacity, and the Magistrate Judge correctly denied the Defendants' Motion for Summary Judgment based on settlor immunity from ERISA.

### C.    <u>NO STANDING UNDER ERISA § 502(a)(3)</u>

The Magistrate Judge recommended the denial of Defendant's Motion for Summary Judgment based on Plaintiff's not having stated a valid claim for redress under ERISA § 502(a)(3).  (Mag. J. R&R, 8.)  The Court rejects the Magistrate Judge's recommendation and finds that Plaintiff's claim should be dismissed.

An ERISA § 502(a)(1)(B) claim can be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan."  On the other hand, an ERISA § 502(a)(3) claim can be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan."  In <u>Varity Corporation v. Howe</u>, 516 U.S. 489, 512 (1996), the Supreme Court found ERISA § 502(a)(3) to be a "catchall" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."

As Defendants assert, the Sixth Circuit follows the language in <u>Varity</u> to be a bar against

an ERISA § 502(a)(3) claim if the plaintiff in a case could have brought the claim under ERISA § 502(a)(1)(B).  See Wilkins, 150 F.3d at 615-16 (finding that plaintiff has no cause of action under ERISA § 502(a)(3) because plaintiff's proper remedy was under ERISA § 502(a)(1)(B)); Marks v. Newcourt Credit Corp., 342 F.3d 444, 454 (finding that "a participant cannot seek equitable relief for a breach of fiduciary duty under the catchall provision of § 502(a)(3) if the alleged violations are adequately remedied under other provisions of § 502").

The proper remedy for recovery of denied benefits in a retirement plan is under ERISA § 502(a)(1)(B), not ERISA § 502(a)(3).  In Crosby v. Bowater Inc. Retirement Plan, 382 F.3d 587, 589 (6th Cir. 2004), the Court of Appeals stated that "ERISA § 502(a)(3) . . . authorizes only suits for injunctive or other equitable relief, [but it] does not, in most situations, authorize an action for money claimed to be due and owing."  The Court continued by further explaining that "Section 502(a)(3) does not authorize a plan participant to sue for recovery of benefits due to him under the terms of the plan" because "[t]hat is the office of § 502[a](1)(B) . . . ."  Crosby, 382 F.3d at 594.  In fact, the Supreme Court has explained that ERISA § 502(a)'s subsections "focus upon specific areas."  Varity, 516 U.S. at 512.  The Supreme Court identified ERISA § 502(a)(1) as the specific section that focuses on "wrongful denial of benefits and information." Id. at 512.   Thus, it becomes evident that a plaintiff seeking legal relief (money damages) properly brings a claim under ERISA § 502(a)(1)(B), whereas a plaintiff seeking equitable relief (i.e. an injunction) need bring a claim under ERISA § 502(a)(3).  Here, the Plaintiff is seeking to be awarded legal relief (money damages) and should have therefore brought her claim under ERISA § 502(a)(1)(B).

However, even though the Plaintiff is seeking the payment of more than $9,000, in

13

allegedly unpaid benefits, the Magistrate Judge persists in finding that Plaintiff's ERISA §

502(a)(3) claim sought equitable relief, not legal relief.  The Magistrate Judge reasoned that

Plaintiff sought to enjoin Defendant from applying the interest rate from August 2001.  (Mag. J.

R&R, 7-8.)  However, this logic does not hold water.  The Plaintiff, in essence, is asking for

allegedly unpaid benefits, which are money damages.  This denial-of-benefits claim is for legal

relief, not equitable relief.  In fact, the Sixth Circuit has explicitly stated that "the Supreme Court

has specifically disallowed money damages as 'appropriate equitable relief' under ERISA."

Helfrich v. PNC Bank, Ky., Inc., 267 F.3d 477, 483 (6th Cir. 2001).  Thus, as Defendants

contend, the recalculation of Plaintiff's allegedly denied benefits should have been brought as a

claim under ERISA § 502(a)(1)(B), the availability of which precludes any action by Plaintiff

under ERISA § 502(a)(3).  Therefore, the Magistrate Judge should have ordered the dismissal of

Plaintiff's claim as brought under ERISA § 502(a)(3).

### D.   CLAIM NOT BARRED BY STATUTE OF LIMITATIONS

The Magistrate Judge recommended the denial of Defendants' Motion for Summary

Judgment based on the claim as time-barred by the statute of limitations.  The Court accepts and

adopts the Magistrate Judge's recommendation.

As presented by the Magistrate Judge, the issue here is "whether the present case is more

analogous to a breach of contract between plaintiff and defendants, or a fringe benefit claim

under the Michigan statute."  (Mag. J. R&R, 9.)  The Sixth Circuit has answered the question.  In

Santino v. Provident Life & Accident Ins. Co., 276 F.3d 772, 776 (6th Cir. 2001), the Court

stated that "[a]lthough ERISA does not provide a statute of limitations for benefit claims, this

Court has noted that such claims are governed by the most analogous state statute of limitations,

14

which is that for breach of contract." See also Laborers' Pen. Trust Fund v. Sidney Weinberger Homes, Inc., 872 F.2d 702, 706 (6th Cir. 1988) (same).  In the state of Michigan, the statute of limitations for breach of contract is six years.  (Mich. Comp. Laws § 600.5807(8) (2000).)  Thus, a claim for the denial of retirement benefits under a payment plan would be treated as an alleged breach of contract, which means that a claimant has six years to come forward with a claim for benefits.

Here, Plaintiff requested that her "Opening Account Balance" be recalculated on March 13, 2002.  The merger of the DOHC/Horizon Plan into the HFHS Plan took place several months later.  Defendant first denied Plaintiff's claim for a recalculation on April 4, 2003.  Plaintiff then filed her complaint under ERISA on January 22, 2004.  Thus, regardless of whether the statute of limitations is triggered by the date of Plaintiff's request or Defendant's denial, there is no time-bar issue here, as Plaintiff has filed her complaint well within the allowable six-year time period.

**IV.    CONCLUSIONS**

Based upon the record established and documentary evidence presented, the Magistrate Judge was correct in granting Defendants' Motion for Summary Judgment based upon the arbitrary and capricious standard of review.  For the reasons stated above, the Court accepts and adopts in part the Magistrate Judge's recommendations.  Accordingly,

IT IS ORDERED that Magistrate Judge's Report and Recommendation of July 1, 2005, is accepted insofar as it is consistent with the rulings indicated above.

15

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is granted.


IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is denied.

_____s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated:  September 15, 2005
        Detroit, Michigan


I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.


_____/s/ Patricia Foster Hommel_____
        Patricia Foster Hommel
    Secretary to Chief Judge Friedman

16